## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 2:12-cv-14125-KMM

GEORGE E. WARREN CORP.,
*a Massachusetts corporation,*

       Plaintiff,

vs.

OCEANCONNECT LLC,
*a Delaware limited liability company,*

       Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART
## DEFENDANT'S MOTION TO DISMISS

THIS CAUSE came before the Court upon Defendant OceanConnect LLC's Motion to

Dismiss (ECF No. 7). Plaintiff filed a Response (ECF No. 12), Defendant filed a Reply (ECF No.

13), and Plaintiff filed a Sur-Reply (ECF No. 16). UPON CONSIDERATION of Defendant's

Motion, Plaintiff's Complaint (ECF No. 1), the Response, Reply, Sur-Reply, supplemental

authority provided by the Parties (ECF Nos. 19, 21, 23), the pertinent portions of the record, and

being otherwise fully advised in the premises, this Court enters the following Order.

## I. BACKGROUND[1]

This is an action for breach of contract pursuant to this Court's diversity jurisdiction.

Plaintiff George E. Warren Corp. is a Massachusetts corporation with its principal place of

business in Vero Beach, Florida. Plaintiff is a company that "blends, imports, markets, and

distributes gasoline and other fuels in the United States." Compl., ¶ 3. Defendant OceanConnect

---

[1] The facts herein are taken from Plaintiff's Complaint. All facts are construed in a light most
favorable to Plaintiff.

LLC is a Delaware limited liability company with its principal place of business in New York. Defendant is a brokerage firm that trades energy-related products.

A. The Clean Air Act and the Environmental Protection Agency

In 2005 and 2007 Congress amended the Clean Air Act ("CAA") to encourage the use of renewable fuels in the United States.  Accordingly, the CAA requires the United States Environmental Protection Agency ("EPA") to "promulgate regulations to ensure that gasoline sold or introduced into commerce in the United States . . . contains the applicable volume of renewable fuel" specified for a particular year.  42 U.S.C. § 7545(o)(2)(A)(i).  To effectuate this directive, the EPA established the "Renewable Fuel Standard Program" (the "RFS Program"), which requires refiners, blenders, and importers of gasoline and diesel fuel (collectively, "regulated entities")— such as Plaintiff—to satisfy a "Renewable Volume Obligation" ("RVO") each year.  See 40 C.F.R., pt. 80, subpart M.  "The RVO corresponds to a particular quantity of renewable fuel, which is determined based on [a regulated entity's] total annual gasoline and diesel production."  Compl., ¶ 11; see also 40 C.F.R., part 80, subpart M.

A regulated entity can satisfy its annual RVO in two ways:  (1) by producing the required amount of renewable fuel, or (2) by purchasing renewable fuel credits on a secondary market.  The latter option is made possible by the CAA, which requires the EPA to generate an appropriate amount of credits anytime a regulated entity "refines, blends, or imports gasoline that contains a quantity of renewable fuel that is greater than the quantity required" by the entity's own RVO. 42 U.S.C. § 7545(o)(5)(A)(i).  These credits are identified by a 38-digit serial number referred to as a "Renewable Identification Number" ("RIN") and may be used or transferred by the regulated entity that generated the underlying credit.  Id. § 7545(o)(5)(B).

The EPA can bring an enforcement action against any regulated entity that fails to satisfy its annual RVO.  The EPA can also bring an enforcement action against any regulated entity that,

2

*inter alia*, generates or transfers invalid RINs, retains RINs illegally, or causes another regulated entity to otherwise violate the requirements of the RFS Program. See 40 C.F.R. §§ 80.1460-1461. A regulated entity's good-faith belief in the validity of acquired RINs is of no consequence: "Invalid RINs cannot be used to achieve compliance with the Renewable Volume Obligations of an obligated party or exporter, regardless of the party's good faith belief that the RINs were valid at the time they were acquired." Id. § 80.1431(b)(2). Regulated entities that violate RFS Program regulations are liable for a civil penalty not to exceed "$25,000 for every day of such violation and the amount of economic benefit or savings resulting from the violation." 42 U.S.C. § 7545(d).

      B. The Transactions & EPA Enforcement

      Sometime in 2010, Plaintiff determined that it had not generated a sufficient quantity of renewable fuel to comply with its RVO. Therefore, on June 29, 2010 Plaintiff purchased 500,000 RINs from Defendant for $250,000. Approximately two weeks later, on July 12, 2010, Plaintiff purchased another 500,000 RINs from Defendant for $242,500.[2] Defendant had acquired the RINS transferred to Plaintiff from a company known as Clean Green Fuels, LLC ("Clean Green"). Clean Green's owner, Rodney R. Hailey, would later be convicted of wire fraud, money laundering, and violations of the CAA in connection with Clean Green's sale of over thirty-five million fictitious RINs between March 2009 and December 2010. See Jury Verdict, United States v. Hailey, No. 11-cr-0540 (WDQ) (D. Md. Oct. 13, 2011), ECF No. 109. Many of these fictitious RINS were sold to Defendant.

      In a letter dated November 7, 2011 (the "EPA Notification Letter"), the EPA notified Plaintiff that it was investigating whether Plaintiff utilized invalid RINs to satisfy its 2010 RVO. Additionally, the EPA informed Plaintiff it had determined that Clean Green had created invalid

---

[2] Defendant, however, did not deliver the RINS purchased by Plaintiff on June 29, 2010 until December 16, 2010, and Defendant did not deliver the RINs purchased by Plaintiff on July 12, 2010 until October 6, 2010.

RINs and that Plaintiff had used approximately 2,632,674 of these invalid RINs to satisfy its 2010 RVO.  The EPA reminded Plaintiff of its power to assess civil penalties for violating the CAA.

Using the list of invalid RINs provided by the EPA, Plaintiff determined that all 500,000 RINs purchased from Defendant on June 29, 2010 were invalid.  Plaintiff further determined that 361,112 of the 500,000 RINs purchased from Defendant on July 12, 2010 were invalid.  The invalid RINs Plaintiff received from Defendant amounted to approximately $425,139.32 of the $492,500 Plaintiff paid to Defendant.

Several days after receiving the EPA Notification Letter, Plaintiff informed Defendant about the invalid RINs.  Plaintiff argued that Defendant breached its contract with Plaintiff and demanded that Defendant transfer to Plaintiff valid replacement RINs so that it could satisfy its RVO.  Plaintiff claims that despite repeated requests, Defendant refused to provide Plaintiff with valid replacement RINs or otherwise reimburse or compensate Plaintiff.  Accordingly, Plaintiff obtained replacement RINs at a cost of $1,188,334.56 and invoiced Defendant for the purchase price.  Defendant has refused to pay the invoice.

On March 21, 2012, Plaintiff signed a settlement agreement with the EPA.  Plaintiff agreed to pay a $250,000 civil penalty in exchange for the EPA's agreement not to impose more serious fines upon Plaintiff.  Plaintiff claims that of the invalid RINs for which Plaintiff was fined by the EPA, approximately 32.7% were purchases from Defendant, representing $81,771 of Plaintiff's $250,000 civil penalty.  Plaintiff now seeks to recover from Defendant the cost of the replacement RINs Plaintiff was forced to purchase, as well as Defendant's pro rata share of the penalty imposed by the EPA.

## II. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Grp., Inc., 835 F.2d 270, 272 (11th Cir. 1988). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully." Id. "But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'shown'—'that the pleader is entitled to relief.'" Id. at 1950. A complaint must also contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). However, "[a] pleading that offers 'a formulaic recitation of elements of a cause of action will not do.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

## III. ANALYSIS

Plaintiff's Complaint alleges breach of contract and express warranty (Count I); breach of implied warranties (Count II); or in the alternative, rescission based on mutual mistake and frustration of purpose (Count III). Defendant argues that the three counts contained in Plaintiff's Complaint fail to state a claim upon which relief can be granted. Defendant also argues that this matter should be dismissed for Plaintiff's failure to join a necessary party, or alternatively, this

matter should be stayed pending the outcomes of various proceedings that involve similar parties or actions that arise out of similar facts. This Court now addresses each of Defendant's arguments in turn.

A. Breach of Contract and Express Warranty

The sale contracts between Plaintiff and Defendant are governed by New York law.[3] In New York, to establish a breach of contract claim, a party must set forth "'the provisions of the contract upon which the claim is based [and] must be sufficiently particular to give . . . notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved as well as the material elements of each cause of action or defense.'" Clifden Futures, LLC v. Man Fin., Inc., 858 N.Y.S.2d 580, 582–83 (N.Y. Sup. Ct. 2008) (quoting Atkinson v. Mobil Oil Corp., 614 N.Y.S.2d 36, 37 (N.Y. App. Div. 1994)). "Furthermore, the complaint must allege the essential terms of the contract, including the specific provisions upon which liability is predicated." Id. at 583 (citing Sud v. Sud, 621 N.Y.S.2d 37 (N.Y. App. Div. 1995)).

Here, Plaintiff adequately states a claim for breach of contract and express warranty. Plaintiff alleges that on June 29, 2010 it purchased 500,000 RINs from Defendant for $250,000, and on July 12, 2010 it purchased another 500,000 RINs from Defendant for $242,500. Plaintiff alleges that these transactions were executed pursuant to a contract between the Parties. Plaintiff alleges that the RINs received from Defendant were invalid, and that by refusing to provide Plaintiff with valid replacement RINs or otherwise reimburse or compensate Plaintiff, Defendant breached specific provisions of the contract between the Parties and caused damage to Plaintiff. See Compl., ¶¶ 33–41.

---

[3] For purposes of this Motion, the Parties have stipulated that New York law applies.

Defendant argues that Plaintiff's claim fails because the provisions that Defendant allegedly breached were not actually part of any contract between the Parties.[4]  At this stage in the proceedings, however, this Court is required to accept as true Plaintiff's factual allegations.  See Iqbal, 129 S. Ct. at 1949.  Accordingly, Plaintiff has stated a claim for breach of contract and express warranty.  Nothing herein precludes Defendant from pursuing this argument in a motion for summary judgment.

### B. Breach of Implied Warranties

Count II of Plaintiff's Complaint alleges a breach of implied warranties.  Specifically, Plaintiff alleges Defendant breached:  the implied warranty of good title, the implied warranty of fitness for a particular purpose, and the implied warranty of merchantability.  Defendant acknowledges that these implied warranties exist under Article II of the New York Uniform Commercial Code ("New York UCC"). Defendant, however, argues that the New York UCC is inapplicable because RINs are not "goods" within the meaning of Article II.

The New York UCC only applies to transactions "in goods."  N.Y. U.C.C. § 2-102.  "Goods" generally means "all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (Article 8) and things in action."  N.Y. U.C.C. § 2-105.  "Goods" also includes "the unborn young of animals and growing crops and other identified things attached to realty."  Id.  A district court recently determined that RINs are not "Goods."  See Lansing Trade Group, LLC v. OceanConnect, LLC, No. 12–2090–JTM, 2012 WL 2449514, at *5 (D. Kan. June

---

[4] Defendant also argues that Count I of Plaintiff's Complaint fails to state a claim upon which relief can be granted because "the EPA has expressly taken the position that it is the buyers who bear the risk of loss for allegedly invalid RINs."  Def.'s Mot. to Dismiss, at 9 (ECF No. 7-1).  This argument, however, is meritless for the reasons set forth by Judge J. Thomas Marten in Lansing Trade Group, LLC v. OceanConnect, LLC, No. 12–2090–JTM, 2012 WL 2449514, at *3 (D. Kan. June 26, 2012).

26, 2012).  That decision, however, was decided under the Kansas UCC.  Id.[5]  No court has ever

determined whether RINs constitute "Goods" under the New York UCC.

Plaintiff argues that RINs are analogous to a foreign currency exchange contract, which is

within the meaning of "Goods" under Article II of the New York UCC.  See N.Y. U.C.C. § 2-105

cmt. 1 ("The exclusion of 'money in which the price is to be paid' from the definition of goods

does not mean that foreign currency which is included in the definition of money may not be the

subject matter of a sales transaction.  Goods is intended to cover the sale of money when money is

being treated as a commodity but not to include it when money is the medium of payment.").  A

currency exchange contract is considered "Goods" because "[i]n a currency exchange contract . . .

the money is not the medium of exchange, but rather the object of exchange."  See In re Koreag,

961 F.2d 341, 355 (2d Cir. 1992).

There is a critical difference, however, between a currency exchange contract (and any

other commodity considered "Goods" under the New York UCC) and a contract for RINs.  As the

district court in Lansing explained,

> RINs are numbers. A RIN conforming to the regulations confers a benefit when an
> obligated party retires it and applies it toward the party's renewable fuel obligation.
> Separated RINs can be bought and sold for investment purposes as commodities. In
> that respect they resemble a number of other commodities—wheat, oil, gold, just to
> name a few—which are clearly goods under Article 2. *Unlike those commodities,*
> *however, separated RINs are essentially informational rather than tangible, and*
> *they have no intrinsic value. They have value only because they confer a right to*
> *claim a fuel credit under EPA regulations. In other words, they constitute a*
> *regulatory credit—a form of intangible right.*

Lansing, 2012 WL 2449514, at *4 (emphasis added).    The contract between Plaintiff and

Defendant was not a contract for wheat, oil, or any other tangible commodity.   Nor was the

contract for "investment securities" to the extent New York courts have held "investment

---

[5] Both the Kansas UCC and the New York UCC contain identical definitions of "Goods."  See
N.Y. U.C.C. § 2-105; KAN. STAT. ANN. § 84-2-105.

securities" to be a "good" under Article II of the New York UCC. <u>See</u> N.Y. U.C.C. § 2-105 (defining "security"); <u>Silverman v. Alcoa Plaza Assoc.</u>, 37 A.D.2d 166, 323 N.Y.S.2d 39 (N.Y. App. Div. 1971) (holding "investment security" to be a "Good" under Article II of the New York UCC). This is because RINs are *numbers* that confer an intangible legal right to be free from a civil penalty under an administrative agency's enforcement scheme, and are therefore more properly categorized as "choses (or things) in action, a term which refers to 'the infinite variety of contracts, covenants, and promises which confer on one party the right to recover a personal chattel or a sum of money from another by an action.'" <u>Lansing</u>, 2012 WL 2449514, at *5 (quoting 63C Am. Jur. 2d <u>Property</u> § 23). Therefore, because RINs are not goods within the meaning of Article II of the New York UCC, Count II of Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### C. Rescission

Count III of Plaintiff's Complaint alleges, in the alternative, rescission based on mutual mistake and frustration of purpose. Rescission is an equitable remedy to compel the cancellation of a written instrument where no adequate remedy at law exists. <u>Sirico v. F.G.G. Product., Inc.</u>, 896 N.Y.S.2d 61, 66 (N.Y. App. Div. 2010). A contract may be rescinded due to, *inter alia*, mutual mistake or misrepresentation of material facts not amounting to fraud. <u>See</u> <u>Vine v. Piehler Pontiac Corp.</u>, 136 N.Y.S.2d 281, 283 (N.Y. Sup. Ct. 1954); <u>Hanover Fire Ins. Co. v. Morse Dry Dock & Repair Co.</u>, 272 N.Y.S. 792, 800 (N.Y. Sup. Ct. 1934). Here, Plaintiff alleges that the validity of the RINs was material to the transaction between Plaintiff and Defendant, and that the transaction was the result of either a mutual mistake between the parties or misrepresentation of the validity of the RINs. Accordingly, Plaintiff has adequately pled a claim for rescission. At this stage in the proceedings, it is of no consequence that Plaintiff has pled claims for damages and a claim for equitable relief. <u>See</u> FED. R. CIV. P. 8(d) ("A pleading that states a claim for relief must

9

contain . . . (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.").

D. Failure to Join a Necessary Party

Under Federal Rule of Civil Procedure 19, a party must be joined if the party will not divest the court of subject matter jurisdiction, and "in that person's absence, the court cannot accord complete relief among existing parties," or the non-party's interest in the litigation is so great that disposing of the action in the non-party's absence may "impair or impede the person's ability to protect the interest; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

Defendant argues that Clean Green is a necessary party to this litigation and because this Court cannot accord complete relief among the Parties in Clean Green's absence, Clean Green should be joined or this action dismissed. According to Defendant, "the principal issue to be adjudicated here is the validity of the RINs that Clean Green Fuels, an EPA-sanctioned facility, generated." Def.'s Reply, at 10. This is incorrect. The EPA has already determined that the RINs Defendant transferred to Plaintiff were invalid. Moreover, Clean Green's owner, Rodney R. Hailey, has already been adjudicated guilty of transferring fictitious RINs to Defendant through Clean Green. See Jury Verdict, United States v. Hailey, No. 11-cr-0540 (WDQ) (D. Md. Oct. 13, 2011).

Even entertaining Defendant's argument, there is no reason this Court cannot render complete relief among the existing parties. The instant action arises out of a contract between one buyer and one seller, both of which are parties to this litigation, and Plaintiff can obtain complete relief from Defendant without the presence of Clean Green. See Jet Pay, LLC v. RJD Stores, LLC, No. 11–60722–CIV, 2011 WL 2708650, at *9 (S.D. Fla. July 12, 2011) (holding joinder unnecessary when plaintiff could obtain complete relief from defendant). Moreover, Clean Green

possesses no interest in this litigation that an adjudication on the merits could possibly impair. As noted, Clean Green has already been adjudicated guilty of transferring fictitious RINs to Defendant. See Jury Verdict, United States v. Hailey, No. 11-cr-0540 (WDQ) (D. Md. Oct. 13, 2011). Finally, there is no risk of an existing party incurring "double, multiple, or otherwise inconsistent obligations" as the validity of the RINs has already been determined and the presence of Clean Green would not alter any potential obligation Defendant may or may not incur. FED. R. CIV. P. 19(a). Therefore, Clean Green is not a required party.

    E. Defendant's Motion to Stay

    Defendant argues that this matter should be stayed pending the outcome of criminal proceedings against Rodney Hailey, the former president and owner of Clean Green. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . . How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" Nelson v. Grooms, 307 F.2d 76, 78 (5th Cir. 1962) (quoting Landis v. North American Co., 299 U.S. 248, 254–55 (1946)). Courts generally examine several factors when determining whether to issue a stay: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and on the court." eCOMSYSTEMS, Inc. v. Shared Mktg. Serv., Inc., No. 8:10–cv–1531–T–33AEP, 2011 WL 280942, at *2 (M.D. Fla. Jan. 26, 2011); see also Roblor Mktg. Grp. Inc. v. GPS Indus., Inc., 633 F. Supp. 2d 1341, 1346–47 (S.D. Fla. 2008).

    On June 25, 2012, a federal jury found Rodney Hailey guilty of wire fraud in connection with, *inter alia*, the transfer of invalid RINs to Defendant through Clean Green. See Jury Verdict, United States v. Hailey, No. 11-cr-0540 (WDQ) (D. Md. Oct. 13, 2011). Thus, to the extent Defendant incorrectly argues that the primary factual dispute in the instant matter concerns the

11

validity of the RINs Defendant received from Clean Green; the dispute has been resolved. Defendant has failed to articulate how a stay pending any possible appeal by Rodney Hailey will simplify the issues or streamline the trial, and it is unclear how any party would be prejudiced by allowing the instant matter to proceed. For these reasons, this Court denies Defendant's motion to stay this matter pending Robert Hailey's criminal proceedings. This Court now addresses Defendant's motion to stay this matter pending the outcome of Defendant's action against the EPA.

On March 15, 2012 Defendant filed suit against the EPA under the Administrative Procedure Act in the District Court for the District of Columbia. Defendant challenges generally the EPA's "implementation, management and regulatory oversight of the Renewable Fuel Standards program under the [CAA]." Def.'s Mot. to Dismiss, at 6. Among the relief requested, Defendant seeks a declaration that it is not legally liable for any invalid RINs it sold to downstream entities such as Plaintiff. Defendant notes that there are five separate actions pending against Defendant in various districts, and Defendant argues that staying the instant matter would "promote judicial and administrative consistency in areas within the specific expertise of the EPA." Id. at 18.

The Lansing court evaluated a similar argument made by Defendant. There, the district court held that in light of the requirement that an applicant for a stay "must make out a clear case of hardship or inequality in being required to go forward," Landis, 299 U.S. at 254, Defendant had "shown no grounds for staying [the] case." Lansing, 2012 WL 2449514, at *7. This Court agrees. Defendant does not demonstrate that sufficient prejudice would result from this action proceeding. To the contrary, were this Court to stay the instant action, Plaintiff would potentially be prejudiced. This is because of the pending claims by other purchasers of invalid RINs from Defendant, one of which has already been allowed to proceed in light of Defendant's action against the EPA. See id.

Moreover, it is unclear how staying the instant matter would promote judicial and administrative consistency. The EPA is vested with the authority to promulgate regulations under the CAA and possesses the authority to determine whether the RINs at issue are invalid. See 42 U.S.C. § 7545(o)(2)(A)(i). The EPA has already determined that the RINs Defendant transferred to Plaintiff were invalid and it is unclear how staying the instant action could foster any further "administrative consistency." Finally, this Court rejects Defendant's argument that the "doctrine of primary jurisdiction"[6] supports its request for a stay. The relevant administrative agency—the EPA—has already determined the RINs at issue are invalid and therefore the doctrine is inapplicable. Accordingly, this Court denies Defendant's Motion to Stay.

## IV. CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Defendant OceanConnect LLC's Motion to Dismiss (ECF No. 7) is GRANTED IN PART AND DENIED IN PART. Count II of Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. Plaintiff has leave to file an amended complaint within fourteen (14) days from the date of this Order.

DONE AND ORDERED in Chambers at Miami, Florida, this 25th day of July, 2012.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:    All counsel of record

---

[6] "'Primary jurisdiction is a judicially created doctrine whereby a court of competent jurisdiction may dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency.'" Smith v. GTE Corp., 236, F.3d 1292, 1298 n.3 (11th Cir. 2001) (quoting Wagner & Brown v. ANR Pipeline Co., 837 F.2d 199, 201 (5th Cir. 1988)).